```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                         :
 4   UNITED STATES OF AMERICA,           :   17-MJ-00647 (UA)
                                         :
 5                                       :   January 27, 2017
               v.                        :
 6                                       :   500 Pearl Street
     STEVEN SIMMONS, et al.,             :   New York, New York
 7                                       :
                    Defendants.          :
 8   ------------------------------------X

 9
             TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
10              BEFORE THE HONORABLE JAMES C. FRANCIS
                  UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13
     For the Government:          UNITED STATES ATTORNEY
14                                BY:  JOSHUA NAFTALIS, ESQ.
                                  ASSISTANT U.S. ATTORNEY
15
     For Defendant Meli:          MICHAEL P. BOWEN, ESQ.
16                                JESSICA ROSENBERG, ESQ.
                                  Kasowitz, Benson, Torres &
17                                 Friedman, LLP
                                  1633 Broadway
18                                New York, New York 10019

19   For Defendant Simmons:       FLORIAN MIEDEL, ESQ.
                                  Miedel & Mysliwiec LLP
20                                111 Broadway, Suite 1401
                                  New York, NY 10006
21

22
     Court Transcriber:           MARY GRECO
23                                TypeWrite Word Processing Service
                                  211 N. Milton Road
24                                Saratoga Springs, NY 12866

25



     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

                                                                    2

1          THE CLERK: US v. Joseph Meli and Steven Simmons.
2  Counsel, please state your name for the record.
3          MR. NAFTALIS: Good afternoon, Your Honor. Josh
4  Naftalis for the Government. With me at counsel table is
5  Alexander Trigianski [Ph.] from the FBI.
6          MR. BOWEN: Good afternoon, Judge. Michael Bowen,
7  B-O-W-E-N, from the law firm Kasowitz, Benson, Torres &
8  Friedman. With me is Jessica Rosenberg also an attorney in my
9  office. We're here on behalf of Joseph Meli.
10         THE COURT: Good afternoon.
11         MR. MIEDEL: Good afternoon, Your Honor. Florian
12 Miedel appearing for Steven Simmons.
13         THE COURT: Good afternoon.
14         Gentlemen, I'm Judge Francis. The purpose of this
15 proceeding is to inform you of certain rights that you have, to
16 inform you of the charges against you, to consider whether
17 counsel should be appointed for you, and to decide under what
18 conditions you should be released.
19         Can I have the time and date of arrest, please?
20         MR. NAFTALIS: Yes, Your Honor. Mr. Meli was
21 arrested at approximately 6 a.m. in Manhattan. Mr. Simmons was
22 arrested at approximately 7:30 in Connecticut and brought to
23 the district.
24         THE COURT: Gentlemen, you have the right to remain
25 silent. You're not required to make any statements. Even if

3

1  you have made any statements to the authorities, you need not
2  make any further statements.  Anything that you do say can be
3  used against you.  You have the right to be released either
4  conditionally or unconditionally pending trial unless I find
5  that there are no conditions that would reasonably assure your
6  presence in court and the safety of the community.
7           You have the right to be represented by counsel
8  during all court proceedings including this one and during all
9  questioning by the authorities.  If you cannot afford an
10 attorney I'll appoint one today to represent you.
11          Mr. Simmons, raise your right hand, please.  Do you
12 swear the information contained in this financial affidavit is
13 true so help you God?
14          DEFENDANT SIMMONS:  I do.
15          THE COURT:  Mr. Miedel, do you have anything else
16 you'd like to say about this application?
17          MR. MIEDEL:  No, Your Honor.
18          THE COURT:  I'm not going to approve it based on the
19 assets.
20          MR. MIEDEL:  Well, let me say this.  In terms of the
21 income, the income was based on Mr. Simmons' self-employment as
22 a financial advisor.  That has ceased.  This is connected with
23 the charges in this case so there's not going to be any future
24 income at least for the time being based on that.  So he has
25 essentially no income going forward.  His wife, as noted, makes

                                                                4

1   very little money as a real estate agent.  So they have really
2   no income.  They have assets but he can't sell his house to
3   raise money for a lawyer.  So in terms of liquid assets at this
4   point, he really doesn't have [inaudible].
5              THE COURT:  He is in a position to take a loan out
6   using the house as security.  And I'm not prepared to, at least
7   in the long term, grant an application for appointment of
8   counsel under the circumstances.
9              MR. MIEDEL:  Sure.  The other issue of course is that
10  the house may be required as collateral for bond.  So we have
11  that to deal with as well.
12             THE COURT:  We do.  What I will do is appoint you for
13  purposes of these proceedings and I will permit Mr. Simmons to
14  reapply for appointment of counsel after efforts have been made
15  to retain counsel on the basis that I've indicated and we'll
16  see where that takes us.
17             MR. MIEDEL:  Okay.
18             THE COURT:  And I note that Mr. Meli has retained
19  counsel.
20             MR. BOWEN:  That's correct, Judge.
21             THE COURT:  Gentlemen, the complaint has four counts.
22  Each of you are charged in Count 1 which charges a conspiracy
23  to commit securities fraud and wire fraud in violation of Title
24  18 United States Code Section 371.  If convicted on that count,
25  you'd be subject to a term of imprisonment of up to five years,

                                                                    5

1  a fine of up to $250,000, and a $100 special assessment.
2              Count 2, which also charges both of you, charges
3  securities fraud in violation of Title 15 United States Code
4  Sections 78(j)(B) and 78(f)(F), and Title 17 of the Code of
5  Federal Regulations Section 240.10(b)(5).  If convicted on that
6  count, you'd be subject to a term of imprisonment of up to 20
7  years, a fine of up to $5 million, and a $100 special
8  assessment.
9              Counts 3 and 4 charge wire fraud.  Only Mr. Meli is
10 charged in Count 4, and both defendants are charged in Count 3.
11 If convicted on either of those counts a defendant would be
12 subject to a term of imprisonment of up to 20 years, a fine of
13 up to $250,000, and a $100 special assessment.
14             Mr. Miedel, have you had an opportunity to review the
15 complaint with Mr. Simmons?
16             MR. MIEDEL:  Yes, I have.
17             THE COURT:  And do you waive its public reading?
18             MR. MIEDEL:  I do.
19             THE COURT:  And Mr. Bowen, have you had an
20 opportunity to review the complaint with Mr. Meli?
21             MR. BOWEN:  Yes.
22             THE COURT:  And do you waive its public reading?
23             MR. BOWEN:  Yes.
24             THE COURT:  Gentlemen, you have the right to a
25 preliminary hearing at which the Government will have the

6

1  burden of establishing that there is probable cause to believe
2  that the crime with which you're charged has been committed and
3  that you are the person who committed it.  If probable cause is
4  not established, you will be released from the charges.  If it
5  is established, the Government will then have the right to
6  proceed to trial against you.
7          If you're in custody, you have the right to a
8  preliminary hearing within 14 days.  If you are not in custody,
9  the preliminary hearing will be held within 21 days, but no
10 preliminary hearing will be held if before the date that it's
11 scheduled you are indicted by a grand jury or an information is
12 filed against you by the Government.  If you are not United
13 States citizens, you may request that a government attorney or
14 law enforcement official contact a consular officer from your
15 country to notify them of your arrest.  However, even without
16 notification -- I'm sorry, even without a request, notification
17 may be required by international agreement.
18          Does the Government have bail recommendations?
19          MR. NAFTALIS:  Your Honor, the Government seeks
20 detention as to both and I believe it's contested.
21          THE COURT:  Mr. Miedel?
22          MR. MIEDEL:  Yes, Your Honor. We contest that.  Do
23 you want me to proceed?
24          THE COURT:  No.  I just want to make sure it's
25 contested.

7

1          MR. MIEDEL:  Okay.

2          MR. BOWEN:  It is contested, Judge.

3          THE COURT:  Very well.

4          MR. BOWEN:  On behalf of Mr. Meli.

5          THE COURT:  The Government may proceed.

6          MR. NAFTALIS:  Your Honor, I'll start with Mr. Simmons.  We would agree, just for the record, that it would appear that CJA counsel is inappropriate.  I'm not sure how someone with almost $1 million in assets would qualify for CJA counsel.  In fact, I believe that Mr. Simmons has more assets than Mr. Meli which makes no sense to the Government.

12         With respect to Mr. Simmons, we seek detention on a dangerousness grounds, Your Honor.  He has threatened violence recently and on two occasions.  When he was arrested by Agent Trigianski, he referenced the fact that in referencing the cooperating witnesses referenced in the complaint Mr. Simmons said he hoped that Mr. Meli put two slugs in the back of the cooperator's head when he found out about Mr. Meli's arrest.  The reason for his arrest was because he had put two slugs.  That's obviously a reference that he hoped that Mr. Meli had killed the cooperating witness.

22         In addition, in the middle of December Mr. Simmons said the following with respect to one of the investors who he ripped off.  This is recorded.  "Yeah exactly, yeah.  Yeah, I mean look, I've gone through every scenario of like you know do

1  they have an accidental OD at home?"  That's overdose.  "Do
2  they have a domestic disturbance where she stabs him in the
3  chest and then decides to kill herself?  You know, like I don't
4  want to have to go that route."
5       We also note in addition that Mr. Simmons has a
6  shotgun which he keeps in his car which he revealed to the
7  agent.
8       These are serious charges.  Obviously, he faces a lot
9  of time.  I believe that the amount of money involved that was
10 solicited on behalf of investors exceeds $10 million.  And when
11 somebody, even though it's a white collar case, is threatening
12 violence both against the cooperating witness and against a
13 victim who he already ripped off we believe detention is
14 appropriate.
15       THE COURT:  Mr. Miedel?
16       MR. MIEDEL:  Your Honor, Mr. Simmons is a 48-year-old
17 father and husband with no prior criminal record whatsoever.
18 He's charged with securities fraud and he's presumed to be
19 released.  There's no reason that this presumption shouldn't
20 apply here.  In fact, there's every reason that Mr. Simmons
21 should be released as Pretrial Services recommends.
22       Let me just give you the little bit of background.
23 As I noted, Mr. Simmons is 48 years old.  He lives in a home
24 that he owns with his wife in Connecticut and their nine-year-
25 old son.  He graduated from [inaudible] University.  Since then

1  he's been essentially involved in the finance world.  He's
2  married to Heather Simmons for 14 days.  She is currently
3  employed as a real estate agent.  Before that she was home with
4  her son and before that she was a vice president at two
5  companies.
6          The bail package that I would suggest to the Court is
7  that Mr. Simmons be released on a signature of his wife as well
8  as that his return be secured by their home which, as I noted
9  in the affidavit, is worth $800,000.  So I'll just state Mr.
10 Simmons is not a risk of flight.  I know that the Government
11 didn't mention that.  I just wanted to get that out of the way.
12         Let me turn to the issue of dangerousness.  Mr.
13 Simmons -- the Government's entire argument is based
14 essentially on two comments.  One that was made this morning by
15 Mr. Simmons in the car when he was with the FBI agent.  When he
16 was told that Joseph Meli had been arrested, something that he
17 didn't know, he said -- he asked what was he arrested for and
18 the FBI agent said -- you know, this is all in sort of a bander
19 in the back of the car kind of conversation.  He said, "Oh no,
20 you know, we can't tell you that."  And he made admittedly a
21 very ill advised but joking comment, "Well, I hope it's for
22 putting a couple of bullets in this guy's head."  This had
23 something to do with a person that has caused Mr. Simmons and I
24 guess Mr. Meli to be here in the first place.  This was not a
25 threat that was issued against the person.  This was a stupid

10

statement made by somebody under very stressful conditions who [inaudible] FBI had shown up at 7:30 in the morning and to his complete shock. You know, it was not issued at anyone. It was essentially a flip stupid comment.

The second statement that the Government referenced is something that was made I guess on tape in December concerning what they call a victim entity or investor. This was an investor that Mr. Simmons had worked with for some time. He knew all kinds of things about her life which was very turbulent. She had domestic violence problems with her boyfriend. She had been to asylum in the past. I don't know what the context of this conversation was. It has not been explained by the Government. But this was not a threat that Mr. Simmons was issuing to anyone.

The bottom line is we're talking about two comments that have no basis. There's no evidence of any actual type of violence in his background anywhere. There's no actual -- there's no evidence of him following through anything. These aren't even threats to follow through with in the first place. And to essentially detain somebody charged with securities fraud who has no prior criminal record on something like that I think is incorrect. Yes, Mr. Simmons owns a shotgun, it's legal, it's licensed. He's happy to turn it in. Again, that has nothing to do with any threats issued at anyone. You know, I can't emphasize enough that Mr. Simmons here is charged with

1  financial fraud as we've seen many times in this courthouse in
2  which people are routinely released because they're presumed to
3  be released under those circumstances.  He's got a very
4  substantial bail package that we can present.  He does not
5  present any danger to the community.  He has not ever been
6  arrested before.  He's never been accused of any kind of crime
7  before this.  There's been no domestic violence or anything
8  like that in his relationship.  So all those circumstances,
9  Your Honor, I would strongly ask that Mr. Simmons -- that you
10 set some sort of reasonable bond in this case and have it be
11 secured by his own, and signature by his wife, and he will
12 absolutely return to court and he will not present a danger to
13 the community.
14           THE COURT:  Thank you,
15           MR. MIEDEL:  Thank you.
16           MR. NAFTALIS:  Your Honor, just to respond briefly.
17 With respect to his finances, we are not making any flight
18 argument.  I will note that he fails also to disclose the fact
19 that he owns a Maserati which is the car that he keeps his
20 shotgun in.  So there is just sort of a level of transparency
21 that's missing with the Court.  He only lists a Porsche on his
22 disclosure form.  And to read this he literally has no assets
23 except his home which again, I'm not sure is entirely accurate.
24           With respect to the threats, people who get arrested
25 for crimes go through the system every day and they don't

12

1   threaten to kill cooperating witnesses and they don't threaten
2   to kill people they've ripped off.  That's what makes this
3   pretty exceptional.  So it's a securities fraud case but the
4   defendant has said, obviously out of frustration, "I wish the
5   cooperating witness had been shot.  I wish Mr. Meli had killed
6   him."  And obviously this case was brought about because Mr.
7   Simmons found himself in the middle of a Ponzi scheme and how
8   do you end that?  He was hoping someone would kill one of his
9   victims to make that problem go away.  The context is that's
10  not how people speak in every day occasion.  I mean if you're
11  stressed out with the FBI, that's especially not how you speak.
12  But he said it on two occasions within the last month.  Neither
13  of them, other than he's being flip -- people who are flip and
14  carry shotguns are not flip, they're dangerous.
15           And especially again, as I'll come back here, the
16  fact that someone is lying to the Court about his assets or
17  saying I don't have the money, this is someone who does not
18  take this seriously and clearly is willing to threaten people.
19  I don't see the presumption rebutted at all.
20           MR. MIEDEL:  Your Honor, briefly.  First of all, the
21  Maserati is leased so it's not something that Mr. Simmons owns.
22  It's owned by the company, the bank, or the Maserati company.
23  It's not an asset in that sense.  And going forward I'm sure he
24  won't be able to make those payments.  It's an extraordinary
25  leap for the Government to suggest that because Mr. Simmons has

13

1  a legal shotgun which he uses [inaudible] he therefore is an
2  individual who's going to go around killing witnesses.  And in
3  the context of who this man is, it's crazy.  It's also -- just
4  the very context of where Mr. Simmons made the statement today,
5  he said it to an FBI agent.  If he was actually making a
6  threat, how would he -- I mean this is ridiculous.  He would be
7  making a threat essentially to an FBI agent about that he hoped
8  a witness in the case had been killed.  That's ridiculous.  Who
9  would do that?  It was done clearly in the sort of context of a
10 stressful situation and as a flip comment that I'm sure he
11 regrets at this point.
12         So in terms of his assets, again, you know, you have
13 it in front of you.  There isn't anything else.  We even tried
14 to note that there is an investment in this company which
15 hasn't gone public yet, so it's not worth a lot on paper.
16 Maybe in the future he will go out and try to look for an
17 attorney.  That's fine.  But for now he doesn't have the money
18 today to pay for an attorney.
19         THE COURT:  All right.  On the basis of the Pretrial
20 Services report, the complaint, and the proffers of counsel, I
21 find that the Government has not sustained its burden of
22 demonstrating that the defendant presents a danger to the
23 community such that there are no conditions that would
24 reasonably assure the safety of the community.  The
25 Government's burden here is to overcome the presumption for

1  bail and demonstrate by clear and convincing evidence that the
2  defendant is such a danger and I do not believe that the
3  comments indicated reach that level.  I think they weren't very
4  well thought out but I also recognize how they could be --
5  could have taken place in the context that defense counsel
6  suggests.  I will note that the Maserati is indicated in the
7  Pretrial Services report, so he did disclose this to Pretrial
8  Services albeit perhaps not as an asset.  And he has no prior
9  record that would support any assertion of dangerousness.
10         I will release Mr. Simmons on a $1 million personal
11 recognizance bond cosigned by four financially responsible
12 persons and secured by his home.  He shall be subject to strict
13 Pretrial Services supervision.  His travel shall be limited to
14 the Southern and Eastern Districts of New York and the District
15 of Connecticut.  He shall surrender all travel documents and
16 not apply for new ones.  And he shall surrender any firearms
17 and not possess any firearms.  He may be released on his
18 signature and that of his wife, the additional signatures to be
19 required by close of business on February the 3rd.
20         MR. MIEDEL:  I just note for the record, Your Honor,
21 that when he was arrested this morning the FBI took his
22 passport, so that's was already taken care of.
23         THE COURT:  Thank you.  As to Mr. Meli?
24         MR. NAFTALIS:  Your Honor, the primary basis for
25 detention is a risk of flight.  During a consensual recording

15

1   with the cooperating witness Mr. Meli said that he had, quote,
2   "I went to my house, got my passport and valuables and I'm
3   draining my bank accounts."  So why someone -- and this is
4   having found out again about the fact that there's an
5   investigation into this.  He's involved in two frauds, the
6   Broadway show fraud and the hedge fund Ponzi scheme fraud.  So
7   the argument here again is -- I'm sure the argument is going to
8   be this is someone being flip or something like that, but you
9   don't get your valuables and drain your bank accounts just
10  because you find out about the FBI.  You do that so you could
11  run.  I don't think I need to elaborate more.
12          THE COURT:  Do you have any corroborative evidence
13  that he has withdrawn from the account or purchase of a ticket,
14  anything like that?
15          MR. NAFTALIS:  Your Honor, this conversation occurred
16  yesterday which is why the arrest happened today.  As Your
17  Honor knows, his arrest was not going to happen today.  My
18  colleague who's in charge of the case, they decided to arrest
19  the individuals today because they believed that Mr. Meli was
20  going to run.  I don't know whether he was able to make travel
21  arrangements but he was arrested shortly after making these
22  comments the next day.
23          THE COURT:  Thank you.  Mr. Bowen?
24          MR. BOWEN:  Thank you, Judge.  Just at the beginning
25  I want to say that my client, Mr. Meli, does not know Mr.

16

1  Simmons as I believe Mr. Simmons' lawyer also represented.  So
2  there's no connection there, either communication or otherwise.
3          With respect to the conversation yesterday, there's a
4  perfectly reasonable explanation for what Mr. Meli meant when
5  he said what he's been alleged to have said and I represented
6  this to counsel, and that is, Your Honor, we were retained
7  yesterday by Mr. Meli.  He came to us because he was concerned
8  that there was a government investigation.  In the course of
9  retaining us, he surrendered to us voluntarily his passport
10 which I have here today.  He also surrendered to us valuables
11 that he had in his house so that we would be able to make a
12 full inventory of it and then be able to work with the
13 Government when we had some understanding of what the charges
14 were so they were completely in safekeeping.  And finally
15 draining the bank account, I could represent to the Court that
16 we received a wire transfer of the retainer amount that we
17 required from Mr. Meli and it's significantly large enough that
18 -- and from my point of view, I would have used the same
19 language that that would drain my bank account.
20          THE COURT:  Is that an admission against interest,
21 Mr. Bowen?
22          MR. BOWEN:  Perhaps, Judge.  So there really is no
23 risk of flight.  If that's all the Government has, they're
24 nowhere near their burden.  And I just would emphasize what's
25 already in the report, Your Honor, that Mr. Meli is a family

17

1  man, he has four kids.  His wife is here today.  She does have
2  real property in her name.  We can put together a bail package
3  of whatever the Court deems appropriate including some kind of
4  lien on that property as well.  So there's no risk of any --
5  even any concern here of any type of flight.
6            And I'll mention just briefly that my client, Mr.
7  Meli, has fathered four children and one as young as two and
8  the oldest is 14.  He's a successful businessperson.  He's been
9  in this business relating to ticket sales for many years and
10 he's currently employed.  All of his roots are here.  His
11 parents live in the same building that he lives in in
12 Manhattan.  He owns, or his wife owns real estate property in
13 Long Island in the Hamptons.  His brother is in Minnesota and
14 his younger sister is in Connecticut.  All of his in-laws are
15 here in the New York Connecticut area.  So all of his roots are
16 here.  There really is no risk of flight.
17           And then finally, Your Honor, Pretrial report notes
18 some dependency issues that my client has, or has had in the
19 past.  And that has to do with some medical conditions that he
20 had, both knee surgery and then he was diagnosed with cancer.
21 He had significant surgery relating to that.  He's been in
22 remission but he's seeing an oncologist on a regular basis.  He
23 takes medication relating to that.  Some of that explains some
24 of the dependency issues that he was grappling with in the
25 past.  But none of that should really be a factor here weighing

18

1  in favor of flight.  Mr. Meli is committed.  I mean it's really
2  demonstrated by the fact that he came and he hired us and he
3  retained us before we really had a clear picture of what the
4  Government was looking at.  Retained us immediately,
5  voluntarily surrendered his passport to us and voluntarily
6  surrendered other valuables to us so that a full accounting
7  could be made and full disclosure could be made to the
8  Government.
9        THE COURT:  Anything further?
10       MR. NAFTALIS:  No.
11       THE COURT:  On the basis of the Pretrial Services
12 report, the complaint, and the proffers of counsel, I find that
13 the Government has not sustained its burden of demonstrating
14 that the defendant presents a risk of flight such that there
15 are no conditions that would reasonably assure his return to
16 court.  There's no presumption against bail in this case.  And
17 while the Government's burden is lower than in a claim of
18 dangerousness, nevertheless I don't think that it has been met.
19 This defendant has substantial roots in the community.  He has
20 had some history of drug use which I think can be addressed.
21 And the comments made I think are adequately explained by
22 counsel and buttressed by the fact that we now have the
23 passport.
24       I will release Mr. Meli on substantially the same
25 conditions as Mr. Simmons.  That is a $1 million personal

```
                                                            19
 1   recognizance bond cosigned by four financially responsible
 2   persons, secured by the wife's property in this instance.  He
 3   shall be subject to strict Pretrial Services supervision,
 4   though in this case it will also include drug testing and
 5   treatment as directed by Pretrial Services.  His travel shall
 6   be limited to the Southern and Eastern Districts of New York.
 7   He shall surrender his travel documents and not apply for new
 8   ones.  To the extent that he has any firearms, he shall
 9   surrender them and not possess firearms.  He may be released on
10   his signature and that -- I believe he has a cosigner here.
11           MR. BOWEN:  Yes, Your Honor.
12           THE COURT:  And that of -- his wife?
13           MR. MIEDEL:  Yes.  Yes, Your Honor.
14           THE COURT:  And that of his wife. Additional
15   cosigners to sign by close of business on February the 3$^{rd}$.  And
16   by the way, that's also the deadline for submitting the
17   documentation with respect to the properties in both cases.
18           Preliminary hearing date, Mr. Miedel?
19           MR. MIEDEL:  I'll waive to the thirtieth day.
20           THE COURT:  That's February the 27$^{th}$.  Mr. Bowen?
21           MR. BOWEN:  Same.
22           THE COURT:  February 27$^{th}$.  Thank you all.
23           MR. MIEDEL:  Thank you, Your Honor.
24                        * * * * *
25
```

```
                                                                      20
 1        I certify that the foregoing is a court transcript from an
 2   electronic sound recording of the proceedings in the above-
 3   entitled matter.
 4
 5                                    _____Mary Greco_____
 6                                    Mary Greco
 7   Dated:  January 31, 2017
```