ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **FEB 2 3 2017**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                :

  - v. -                                :   INDICTMENT

STEVEN SIMMONS and                      :   **17 CRIM 127**
JOSEPH MELI,
                                        :
              Defendants.
                                        :
- - - - - - - - - - - - - - - - - - x

### COUNT ONE

(Conspiracy to Commit Securities Fraud and Wire Fraud)

The Grand Jury charges:

#### Relevant Entities and Individuals

1. At all times relevant to this Indictment, Sentinel Growth Fund Management ("Sentinel") was a hedge fund with offices in Connecticut and New York, New York. Sentinel was founded in or about 2013 by Mark Varacchi, a co-conspirator not charged as a defendant herein.

2. At all times relevant to this Indictment, STEVEN SIMMONS, the defendant, worked with Mark Varacchi to obtain investments in Sentinel through, among other means, soliciting representatives of wealthy private families and individuals. SIMMONS solicited these investments through a corporate entity operated by SIMMONS which advertised itself as specializing in allocating investment capital to various portfolio managers and


JUDGE WOOD

"delivering consistent above market returns while maintaining a vigilant focus on capital preservation."

3. At all times relevant to this Indictment, JOSEPH MELI, the defendant, operated a business, Advance Entertainment, LLC ("Advance"), based in New York, New York, which purported to be in the business of purchasing, and reselling for profit, tickets to various live events including concerts and theatrical productions.

### The Scheme to Defraud Relating to Sentinel

4. From at least in or about 2013 through in or about January 2017, STEVEN SIMMONS and JOSEPH MELI, the defendants, participated in a scheme to defraud investors in Sentinel by soliciting investments through false representations to investors and, after obtaining investor funds, providing them to Mark Varracchi to make payments to other Sentinel investors and otherwise misappropriating the funds.

5. In furtherance of the scheme, STEVEN SIMMONS and JOSEPH MELI, the defendants, falsely told investors that, among other things, the invested funds would be used for legitimate, specified, investment purposes when, in truth and in fact, and as SIMMONS and MELI well knew, the funds would be used to repay prior Sentinel investors whose funds had been embezzled and diverted to the personal use of SIMMONS, Varacchi and others. As part of the

fraudulent scheme, SIMMONS also created and provided investors with false monthly statements.

6. In regard to a particular individual investor ("Victim-1"), in or about August 2014, STEVEN SIMMONS, the defendant, solicited an approximately $5.95 million investment by falsely promising Victim-1, among other things, that Victim-1's investment would be invested by Sentinel in securities, that Victim-1 would receive a return of not less than 15% on Victim-1's investment, and that Victim-1's principal investment would not be placed at risk or commingled with other investor funds. Upon receiving Victim-1's investment funds, SIMMONS immediately diverted approximately $1.95 million of Victim-1's investment and did not provide those funds to Sentinel for investment in securities. SIMMONS transferred the rest of Victim-1's investment funds to Sentinel so that Mark Varacchi, as SIMMONS well knew, could misappropriate and utilize the funds to make payments to other Sentinel investors. As part of the scheme, SIMMONS provided Victim-1 with monthly statements falsely stating, among other things, that Victim-1's principal investment was intact and had earned substantial interest.

7. In regard to another investor, an entity ("Victim-2"), in or about November 2015, Victim-2 demanded the return of its investment funds, which had largely been misappropriated by Mark

Varacchi, and threatened to contact the U.S. Securities and Exchange Commission (the "SEC") regarding Sentinel. In order to assist Varacchi in repaying Victim-2, STEVEN SIMMONS and JOSEPH MELI, the defendants, obtained from other investors, through false representations, additional investment funds which SIMMONS and MELI then provided to Varacchi for use in repaying Victim-2. In soliciting these funds from investors, SIMMONS falsely told a particular investor, an entity ("Victim-3"), that its funds would be allocated among four portfolio managers working with Sentinel for investments in securities. Similarly, MELI obtained funds to assist Varacchi in repaying Victim-2 by falsely representing to another investor, an entity ("Victim-4"), that its funds would be utilized for the bulk purchase of tickets to a Broadway show which would then be resold on the secondary market. In fact, upon receiving funds from Victim-4, MELI immediately transferred them to Sentinel.

8. As a result of this fraudulent scheme, which STEVEN SIMMONS and JOSEPH MELI, the defendants, furthered through false statements to investors, more than approximately 30 investors in Sentinel were defrauded out of more than approximately $20 million.

## Statutory Allegations

9. From at least in or about 2013 up to and including in or about January 2017, in the Southern District of New York and elsewhere, STEVEN SIMMONS and JOSEPH MELI, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and wire fraud, in violation of Title 18, United States Code, Section 1343.

10. It was a part and object of the conspiracy that STEVEN SIMMONS and JOSEPH MELI, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which

5

they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

11. It was a further part and an object of the conspiracy that STEVEN SIMMONS and JOSEPH MELI, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Overt Acts

12. In furtherance of the conspiracy and to effect the illegal objects thereof, STEVEN SIMMONS and JOSEPH MELI, the defendants, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about July 24, 2014, SIMMONS sent an e-mail to Victim-1 listing the terms of an "investment proposal" for how Victim-1's funds would be invested by Sentinel.

b. In or about December 2015, SIMMONS spoke with the Chief Executive Officer of Victim-3, which is based in Westchester, New York, to solicit an investment in Sentinel.

c. On or about December 29, 2015, MELI directed a wire transfer in the amount of $1.5 million from a bank account in the name of Advance Entertainment, LLC, which was located in New York, New York, to Sentinel.

(Title 18, United States Code, Section 371.)

## COUNT TWO

### (Securities Fraud)

The Grand Jury further charges:

13. The allegations set forth in paragraphs 1 through 8 and paragraph 12 are realleged and incorporated by reference as if fully set forth herein.

14. From at least in or about 2013 through in or about January 2017, in the Southern District of New York and elsewhere, STEVEN SIMMONS and JOSEPH MELI, the defendants, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with

7

the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, SIMMONS and MELI, utilizing false representations, obtained funds from investors in order to utilize those funds to make payments to Sentinel investors that had demanded the return of their funds.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

### COUNT THREE

### (Wire Fraud)

The Grand Jury further charges:

15. The allegations set forth in paragraphs 1 through 8 and paragraph 12 are realleged and incorporated by reference as if fully set forth herein.

16. From at least in or about 2013, up to and including in or about January 2017, in the Southern District of New York and

elsewhere, STEVEN SIMMONS and JOSEPH MELI, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and attempting to do so, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, SIMMONS and MELI, utilizing false representations, obtained funds from investors in order to utilize those funds to make payments to Sentinel investors that had demanded the return of their funds.

(Title 18, United States Code, Sections 1343 & 2.)

## COUNT FOUR

### (Wire Fraud)

The Grand Jury further charges:

17. The allegations set forth in paragraphs 1 through 8 and paragraph 12 are realleged and incorporated by reference as if fully set forth herein.

### MELI's Fraudulent Ticket Resale Scheme

18. From at least in or about 2015 through in or about January 2017, JOSEPH MELI, the defendant, conducted a scheme to defraud more than approximately 130 investors who invested a total

9

of more than approximately $95 million through false representations that MELI would use investor funds to purchase tickets to various live events for resale at a profit on the secondary market. In fact, MELI utilized a substantial portion of the investor funds he obtained to make payments to previous investors and for other inappropriate purposes, such as purchasing real estate and luxury items, and utilizing a portion to repay a Sentinel investor, as set forth above in paragraph 7.

19. In furtherance of the fraudulent scheme, JOSEPH MELI, the defendant, falsely represented to investors that MELI had entered into written agreements with the production companies (the "Production Companies") for two popular Broadway shows (the "Shows") to purchase large blocks of tickets to the Shows. In truth and in fact, MELI had not entered into such agreements and did not have any contractual rights to purchase tickets from the Production Companies. MELI moreover provided investors with falsified documents purporting to reflect agreements between MELI's company, Advance, and the Production Companies, in which the Production Companies agreed to sell Advance large blocks of tickets to the Shows. These fake agreements contained falsified signatures of representatives of the Production Companies.

20. Rather than utilizing investor funds to purchase tickets to the Shows from the Production Companies, as JOSEPH MELI, the

10

defendant, had promised investors, MELI utilized a substantial portion of the investor funds he obtained to repay prior investors in MELI's ticket business and for MELI's personal use including, among other things, payments for a $3 million house in East Hampton, New York, a 2017 Porsche convertible, and expensive watches and jewelry.

## Statutory Allegations

21. From at least in or about 2015 through in or about January 2017, in the Southern District of New York and elsewhere, JOSEPH MELI, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and attempting to do so, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, MELI, utilizing false representations, obtained funds from investors and then utilized those funds to make payments to earlier investors and otherwise misappropriated those funds for his personal benefit.

(Title 18, United States Code, Sections 1343 & 2.)

## COUNT FIVE

### (Securities Fraud)

The Grand Jury further charges:

22. The allegations set forth in paragraphs 1 through 8, paragraph 12, and paragraphs 18 through 20, are realleged and incorporated by reference as if fully set forth herein.

23. From at least in or about 2013 through in or about January 2017, in the Southern District of New York and elsewhere, JOSEPH MELI, the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, MELI, utilizing false representations, obtained funds from investors and then utilized

those funds to make payments to earlier investors and otherwise misappropriated those funds for his personal benefit.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

24. As a result of committing one or more of the offenses alleged in Count One through Five of this Indictment, STEVEN SIMMONS and JOSEPH MELI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

    a.    The real property with address 50 Green Hollow Road, East Hampton, New York, 11937;

    b.    A 2017 Porsche 911 Turbo bearing Vehicle Identification Number WP0CD2A95HS178299;

    c.    A Rolex watch, Model # 116710BLNR, bearing serial number 412Z1733;

    d.    A Patek Philippe watch, World Time A8R IVA SKBK DP, bearing serial number 5786338/4647627;

13

e.  A Patek Philippe watch, CALTRV SEC A8W BLA SKBK D, bearing serial number 5881281/6037122;

f.  All funds held in Merrill Lunch Bank & Trust Company Account # 5AX-03098 in the name of Advance Entertainment, LLC;

g.  All funds held in Signature Bank Account # 1503001655 in the name of Advance Entertainment II, LLC;

h.  All funds held in Signature Bank Account # 1502805327 in the name of Advance Entertainment II, LLC;

i.  All funds held in Signature Bank Account # 1502702528 in the name of Advance Entertainment II, LLC;

j.  All funds held in JPMorgan Chase Account # 2991237799 in the name of 127 Holdings, LLC;

k.  All funds held in Signature Bank Account # 1502571199 in the name of 875 Holdings, LLC; and

l.  A sum of $685,000 held at Citibank in Account # 9250402260.

### Substitute Asset Provision

25. If any of the above described forfeitable property, as a result of any act or omission of the defendants:

14

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853(p), and
Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

STEVEN SIMMONS and
JOSEPH MELI,

Defendants.

### INDICTMENT

17 Cr. \_\_\_ (\_\_\_)

(Title 18, United States Code, Sections
371, 1343 & 2; Title 15, United States
Code, Sections 78j(b) & 78ff; and Title
17, Code of Federal Regulations,
Section 240.10b-5;)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

Foreperson.

Feb 23, 2017

Filed Indictment, Case assigned to Judge Wood
U.S.M.J. Debra Freeman

16