KASOWITZ BENSON TORRES LLP
Daniel J. Fetterman
*dfetterman@kasowitz.com*
Michael P. Bowen
*mbowen@kasowitz.com*
Jeffrey R. Alexander
*jalexander@kasowitz.com*
1633 Broadway
New York, NY 10019
(212) 506-1700 (telephone)
(212) 506-1800 (facsimile)

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

    **v.**

**JOSEPH MELI,**

           **Defendant.**

**17-CRIM-00127(KMW)**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**JOSEPH MELI'S MOTION TO SUPPRESS STATEMENTS RECORDED**
**IN VIOLATION OF THE RULES OF PROFESSIONAL CONDUCT**

Defendant Joseph Meli respectfully submits this memorandum of law in support of his motion to suppress all statements elicited from Mr. Meli by a Government confidential informant on January 26, 2017, in violation of Rule 4.2 of the Rules of Professional Conduct.[1]

## PRELIMINARY STATEMENT

At issue are the Government's tactics in its pre-indictment investigation of Mr. Meli on January 26, 2017.  On that date, the Government directed its informant Mark Varacchi (the "Confidential Witness" or the "CW"), a longtime friend of Mr. Meli's, to surreptitiously record Mr. Meli outside the presence of the legal counsel that Mr. Meli had retained in connection with the Government's investigation.[2]  That day – over the phone, in-person, and via WhatsApp message – Mr. Meli insisted to the CW that he "hired a [lawyer] named Marc Kasowitz," that he "can't leave" his attorneys' office, and that any conversation between the two of them happen at his "attorneys' office."  Despite Mr. Meli's repeated protests, the Government knowingly sent the CW to bypass Mr. Meli's attorneys, Kasowitz Benson Torres LLP ("KBT"), and to lure Mr. Meli into isolation so that he could be questioned outside the presence of his counsel and without the benefit of legal advice.  The statements elicited by the CW in the course of the sting operation on January 26, 2017 were obtained in direct violation of the "no contact" prohibition provided in Rule 4.2 of the Rules of Professional Conduct and should be suppressed at trial.

## STATEMENT OF FACTS

On the afternoon of January 26, 2017, Mr. Meli met with his KBT attorneys at their office in midtown Manhattan to discuss the active Government investigation against Mr. Meli

---

[1]     Also submitted herewith is the October 23, 2017 Declaration of Daniel J. Fetterman ("Fetterman Decl."). All exhibits referenced herein are exhibits to the Fetterman Decl.

[2]     Mr. Varacchi is cooperating with the Government in this investigation.  He has pled guilty, pursuant to a cooperation agreement, to charges of conspiracy to commit securities fraud and wire fraud, securities fraud, and two counts of wire fraud, and is cooperating with the Government's investigation in the hopes of obtaining leniency at the time of sentencing.  *See United States v. Varacchi*, 1:17-cr-00076-NRB.

(which precipitated this case).  While Mr. Meli was at his attorneys' offices seeking counsel

regarding the Government's investigation, the CW called Mr. Meli to coordinate a face-to-face

conversation for later that same day.

On their first phone call on January 26, 2017, around 1:50 P.M., Mr. Meli explicitly told

the CW that he wished to meet and talk to the CW at his attorneys' offices at "1633 Broadway":

"I would love if you came to the attorneys' office.  We could talk here quietly without any

problem."  Ex. 1 (USAO 1_015256) at 1:06-1:15.  The CW resisted the invitation, suggesting

that Mr. Meli "just come down and meet me."  *Id*. at 1:15-1:25.  Mr. Meli dismissed the CW's

contrived rebuttal regarding whether the CW might be identified by KBT counsel:  "No.

Absolutely not."  *Id*. at 1:30-1:32.  The CW, clearly confused on how to proceed in

communicating with a target who was actively meeting with his counsel, stalled and told

Mr. Meli that he would call back when he was near KBT's offices in midtown.  *Id*. at 1:33-1:40.

Nearly 13 minutes passed before the CW and Mr. Meli spoke again on the phone: a

critical span of time in which the Government, acting directly through a team of FBI agents, was

likely coaching the CW on how best to coax Mr. Meli away from his attorneys.  From 1:58 P.M.

until approximately 2:05 P.M., Mr. Meli repeatedly sent the CW messages via WhatsApp that

unequivocally stated that he "can't leave" his attorneys' offices and "can't communicate on this

anymore."  Ex. 2 (1/26/2017 WhatsApp Conversation), 1:59:01 P.M. - 2:04:50 P.M.  Ignoring

Mr. Meli's unmistakably explicit directive that he only wished to discuss the investigation where

he had access to his attorneys and the benefit of their legal advice, the CW repeatedly refused to

meet Mr. Meli at his lawyer's offices, providing only spoon-fed pretext to evade the

"no-contact" rule.  *See, e.g., id*. at 2:01:26 P.M. (CW: "your guy[']s office doesn[']t make me

feel good about this.").

2

At around 2:05 P.M., Mr. Meli and the CW had a second phone call wherein Mr. Meli *again* emphatically stated to the CW that he did not want to have a discussion outside of his attorneys' offices: "I can't have a huge back and forth with you. This is not a huge debate. I just need you to come here so you and I can talk in person. Period. Stop. There's nothing else to it. But, I need you to do it." Ex. 3 (USAO 1_015257) at 12:40-12:53. The CW again lied in order to avoid the attorneys' office: "It is a huge debate, Joe, I don't know what I'm walking into and I'm now very concerned. This makes no sense to me." *Id*. at 12:53-13:01. After continued exhortation from the CW, and under false pretenses, Mr. Meli eventually relented and left a meeting with his attorneys to speak with the CW just outside the KBT office in his car. *Id*. at 13:17-13:30 (Mr. Meli: "The fact that you won't do this bothers me. So, I'll see you wherever you need me to see you.").

Twenty-five minutes later, Mr. Meli met the CW in his car parked *directly* in front of the KBT office. Mr. Meli promptly and unequivocally told the CW that the FBI was investigating him for fraud and that he had "hired a guy named Marc Kasowitz" to represent him during the fraud investigation because he was "going to fight it." *Id*. at 40:20-26; 40:43-54. The Government, now clearly on notice that Mr. Meli was represented by counsel in the fraud investigation, continued, via its CW, to ask Mr. Meli about the investigation until Mr. Meli made a series of rambling, contradictory statements that the Government has pointed to as evidence of his guilt and flight risk. *See, e.g.*, Ex. 4 (1/27/17 Arraignment Tr.) at 14:24-15:11.

**LEGAL ARGUMENT**

I.      **THE RECORDED STATEMENTS SHOULD BE SUPPRESSED
        BECAUSE THE GOVERNMENT VIOLATED RULE 4.2 OF
        THE RULES OF PROFESSIONAL CONDUCT.**

Rule 4.2(a) of the Rules of Professional Conduct prohibits a lawyer from communicating

or causing "another to communicate about the subject of the representation with a party the

lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior

consent of the other lawyer or is authorized to do so by law."  Comment 1 to Rule 4.2 explains

that the purpose of the Rule is to contribute to:

> the proper functioning of the legal system by protecting a person
> who has chosen to be represented by a lawyer in a matter against
> possible overreaching by other lawyers who are participating in the
> matter, interference by those lawyers with the client-lawyer
> relationship, and un-counseled disclosure of information relating to
> the representation.

NY ST RPC Rule 4.2 (McKinney); *see also United States v. Jamil*, 707 F.2d 638, 646 (2d Cir.

1983) (professional conduct rules are meant "to protect a defendant from the danger of being

'tricked' into giving his case away" in the absence of his legal counsel).

The Second Circuit has made clear that the Rules of Professional Conduct, including

Rule 4.2, apply to federal prosecutors and that prosecutorial misconduct violating such rules may

warrant suppression of evidence.  *See United States v. DeVillio*, 983 F.2d 1185, 1192

(2d Cir. 1993) (disciplinary rules "apply to criminal prosecutions" and the "investigatory stages

of a case"); *United States v. Basciano*, 763 F. Supp. 2d 303, 330 (E.D.N.Y. 2011) (same).

Indeed, the Department of Justice has explicitly incorporated Rule 4.2 within the United States

Attorney Manual.  *See* U.S. ATTORNEYS' MANUAL, CRIMINAL RESOURCE MANUAL 296,

https://www.justice.gov/usam/criminal-resource-manual-296-communications-represented-

persons-issues; *see also* U.S. ATTORNEYS' MANUAL § 9-13.200, https://www.justice.gov/usam

4

/usam-9-13000-obtaining-evidence#9-13.200.   In fact, this Circuit has held that suppression is

an appropriate remedy for a violation of the "no contact" rule.  *See United States v. Hammad*,

858 F.2d 834, 840 (2d Cir. 1988) ("[I]n light of the underlying purposes of the Professional

Responsibility Code . . . suppression may be ordered in the district court's discretion.").

 Rule 4.2 extends to govern the behavior of government informants, such as the CW here,

because an informant like Mr. Varacchi becomes a prosecutor's "alter ego" and engages in

communication proscribed by Rule 4.2 when questioning a represented person at the

prosecutor's direction.  *See Hammad*, 858 F.2d at 837 (discussing alter ego relationship between

informant and prosecutor in the context of DR 7-104(A)(1), which Rule 4.2 supersedes); *Maine*

*v. Moulton*, 474 U.S. 159, 176 (1985) (right to assistance of counsel violated by admission at

trial of statements made by defendant to the government's undercover informant even where

informant was instructed by the government not to attempt to question respondent directly).

 In the pre-indictment context, applicable here, the Second Circuit has stated that the

professional conduct rules barring contact with represented persons, such as Rule 4.2, should be

applied on a "case-by-case" basis to suppress evidence, but certainly in situations where the

prosecutor's conduct amounts to egregious misconduct.  *Hammad*, 858 F.2d at 840.  Here, just as

in *Hammad*, 858. F.2d at 835-36, prior to indictment,[3] the Government used false pretenses to

elicit incriminating evidence.  *See* Exs. 2-3.  Similarly, in *United States v. Sam Goody*, the court

granted defendant a new trial and found that, among other misdeeds, the government had

engaged in "deeply disturb[ing]" misconduct where it made the "unethical" decision to wire an

---

[3] *Hammad*, 858 F.2d at 839 ("[W]e resist binding the Code's applicability to the moment of indictment.  The timing of an indictment's return lies substantially within the control of the prosecutor.  Therefore, were we to construe the rule as dependent upon indictment, a government attorney could manipulate grand jury proceedings to avoid its encumbrances.").

informant and send him to elicit incriminating statements after the defendant's attorney advised the prosecution to deal only with counsel.  518 F. Supp. 1223, 1224-25 n.3 (E.D.N.Y. 1981).

Here, as in *Sam Goody*, the prosecutor's choice to interrogate Mr. Meli outside the presence of his attorneys, after he affirmatively, repeatedly communicated to the CW that he had retained legal counsel for the investigation and only wanted to discuss the investigation at his "attorneys' office," amounts to "unethical" misconduct warranting suppression under Rule 4.2.[4] In fact, the recordings themselves belie the Government's appreciation of Mr. Meli's attorney-client relationship and its intention to sever that relationship to isolate him for questioning. Nearly 13 minutes passed between Mr. Meli's initial statement to the CW that he "would love if [he] came to the attorneys' office" (Ex. 1 at 1:06-1:15) and the call wherein the CW lured Mr. Meli to the street to question him without the aid of his legal counsel (Ex. 3 at 12:35). Indeed, the CW's repeated refusal to oblige Mr. Meli's wishes to speak at KBT's offices reveals that the Government understood it would face admissibility and ethical concerns if the conversation occurred inside Mr. Meli's attorneys' offices, as opposed to curbside directly *outside* the office where the conversation actually occurred.  *Compare* Ex. 2 (Mr. Meli: "I can't leave here.") and Ex. 3 (Mr. Meli: "I just need you to come here so you and I can talk in person. . . . There's nothing else to it."); *with* Ex. 2 (CW: "your guy[']s office doesn[']t make me feel good about this."); and Ex. 3 at 12:53-13:01 ("It is a huge debate, Joe, I don't know what I'm walking into and I'm now very concerned.  This makes no sense to me.").

Further, suppression of the evidence is appropriate here because none of the concerns

---

[4]     The case law discussing non-egregious prosecutorial conduct in the investigatory stage is not to the contrary.  *See United States v. Nouri*, 611 F. Supp. 2d 380, 387 (S.D.N.Y. 2009) (no egregious misconduct in pre-indictment investigation where the CW followed the defendant's lead and only gave "natural response[s]" to the defendant's statements); *United States v. Binday*, 908 F. Supp. 2d 485, 493 (S.D.N.Y. 2012) (defendant, despite having known counsel, never hesitated or expressed discomfort in talking to the CW outside the presence of his counsel).

underpinning limitations on the "no contact" rule in the pre-indictment context are at issue in this

case.  As the Second Circuit explained in *Hammad,* the seminal case on the pre-indictment

applicability of the 'no contact' rule, rules of conduct in the investigatory stages of a criminal

proceeding must be somewhat relaxed so as not to unduly restrict prosecutors "in that small but

persistent number of cases where a ***career criminal*** has retained 'house counsel' to represent him

in connection with an ongoing fraud or criminal enterprise."  858 F.2d at 839.  Clearly, the

instant case and the related investigation of Mr. Meli do not implicate the "house counsel"

exception described in *Hammad*.  Mr. Meli retained KBT solely for *this* case and the related

criminal investigation – facts Mr. Meli communicated to the CW, and thus, to the Government,

prior to the unlawful interrogation.  The January 26, 2017 recorded statements should be

suppressed because the Government's contact with Mr. Meli outside the presence of his counsel

was an unethical, egregious abuse of the discretion granted to prosecutors in the investigatory

stages of a criminal case.  *Id.* at 840 ("[I]n light of the underlying purposes of the Professional

Responsibility Code . . . suppression may be ordered in the district court's discretion.").

This Court will be hard-pressed to find a more prototypical example of the misconduct

Rule 4.2 was designed to guard against.  Here, the Government manipulated Mr. Meli, a known

represented person, into "giving his case away" within a stone's throw of his attorneys' offices.

*See Jamil*, 707 F.2d at 646.  Such intentional and flagrant interference with the attorney-client

relationship, a relationship that is the bedrock of the "proper functioning of the legal system,"

amounts to the type of egregious misconduct and "overreaching" that Rule 4.2 was enacted to

prevent.  Accordingly, pursuant to Rule 4.2 of the Rules of Professional Conduct and consistent

with the Court's discretion to suppress ill-gotten evidence recognized in *Hammad*, this Court

should now order suppression of the January 26, 2017 recordings of Mr. Meli.

At a minimum, this Court should conduct an evidentiary hearing in order to determine the extent to which the CW acted at the direction of the FBI and the United States Attorney team investigating and prosecuting this action.  At such a hearing, the Court may make factual findings regarding the *content* of any directions or instructions given by the Government to the CW on January 26, 2017 as he communicated with Mr. Meli in order to elicit a recording of Mr. Meli mere feet outside of his attorney's office following the time in which Mr. Meli retained counsel.  *See, e.g.*, *United States v. Pena*, 961 F.2d 333, 340 (2d Cir. 1992) (case remanded to conduct a suppression hearing); *Hammad*, 858 F.2d at 836 (suppression hearing was held to ascertain whether the prosecutor knew that defendant had counsel); *United States v. Stringer*, 408 F. Supp. 2d 1083, 1084 (D. Or. 2006) (court conducted evidentiary hearing based on reasonable concern about government's intertwinement in the investigation); *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1135 (N.D. Ala. 2005) (same).

## CONCLUSION

For the reasons set forth herein, Mr. Meli respectfully requests that the Court grant his motion to suppress the recorded statements obtained by the Government in violation of the Rules of Professional Conduct and Second Circuit case law.

Dated: New York, New York

      October 23, 2017

By:  /s/ Daniel J. Fetterman
Daniel J. Fetterman
Michael P. Bowen
Jeffrey R. Alexander
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Defendant Joseph Meli*
