UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA
:   **DECLARATION IN SUPPORT**
　　　　　　　　　　　　　　　　　　　　**OF APPLICATION FOR A**
　-v.-　　　　　　　　　　　　　　:   **PRELIMINARY ORDER OF**
　　　　　　　　　　　　　　　　　　　　**FORFEITURE AS TO SPECIFIC**
:   **PROPERTY/MONEY JUDGMENT**
JOSEPH MELI,
:
　　　　　Defendant.　　　S1 17 Cr. 127 (KMW)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

STATE OF NEW YORK　　　　）
COUNTY OF NEW YORK　　　　:ss.:
SOUTHERN DISTRICT OF NEW YORK  ）

　　　SEAN SWEENEY, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

　　　1.　　I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for approximately two years. During my tenure with the FBI, I have received training in financial analysis and have participated in other investigations involving securities fraud. In addition, before joining the FBI, I became a certified public accountant and have maintained that certification to the present.

　　　2.　　The information contained in this affidavit is based upon my personal knowledge and involvement in the investigation of this matter, as well as information obtained from other sources, including conversations with other law enforcement officers and others, as well as my review of documents gathered during the course of this investigation.  Because this affidavit is being submitted for a limited purpose, it does not include every fact that I have learned during the course of the investigation.  Where the contents of documents and actions, statements and

1

conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. I make this Declaration in support of the Government's application for a preliminary order of forfeiture, finding the defendant, JOSEPH MELI ("MELI" or "defendant"), liable for a personal money judgment in the amount of $104,764,565 and forfeiting all of his right, title and interest in the property (the "Specific Property") listed in the proposed Preliminary Order of Forfeiture as to Specific Property/Money Judgment and attached hereto as Exhibit A.

4. The Specific Property is subject to forfeiture pursuant to Title 18, United States Code 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as property, real or personal, which constitutes or is derived from proceeds traceable to the defendant's commission of securities fraud, in violation of Title 18, United States Code Section 981.

**Background**

5. The Government's investigation in this case revealed that MELI was involved in a scheme in which he and others falsely represented to investors that MELI would use their funds to purchase tickets to various live events, based on agreements he had made with the producers of the events, and then resell those tickets at a profit on the secondary market (the "Ticket Investment Scheme"). In fact, MELI utilized most of the investor funds he obtained to make payments to previous investors and for other inappropriate purposes, such as purchasing real estate and luxury items, and utilizing a portion to pay a Sentinel investor.

6. As alleged in the S1 Indictment in this case, throughout the Ticket Investment Scheme, i.e. from in or about 2015 through in or about January 2017, MELI and others

2

defrauded more than 130 investors out of approximately $97 million. As part of the Ticket Investment Scheme, victim investor funds were transferred to bank accounts in the names of the following entities: Advance Entertainment LLC ("Advance Entertainment"), Advance Entertainment II, LLC ("Advance Entertainment II"), 127 Holdings LLC ("127 Holdings") and 875 Holdings ("875 Holdings"), among others.

7. Advance Entertainment LLC ("Advance Entertainment") is a Delaware limited liability company controlled by MELI and organized in 2011 with a principal place of business in New York, New York at what appears to be MELI's residence. It purported to be in the business of purchasing, and reselling for a profit, tickets to various live events including concerts and theatrical productions. Account ▓▓▓▓▓ in the name of Advance Entertainment at Merrill Lynch (the "3098 Account" or the "Advance Entertainment Account") received victim investor funds.

8. Advance Entertainment II, LLC ("Advance Entertainment II") is a Delaware limited liability company organized in 2016 with a principal place of business in New Canaan, Connecticut. Matthew Harriton ("Harriton") managed Advance Entertainment II, and MELI and Harriton directly or indirectly own Advance Entertainment II. As detailed below, account Number ▓▓▓▓▓ at Signature Bank in the name of Advance Entertainment II (the "Advance Entertainment II Account") received victim investor funds.

9. 127 Holdings is a Delaware limited liability company controlled by MELI and organized in 2009 with a principal place of business at what appears to be MELI's residence in New York, New York. As detailed below, Account ▓▓▓▓▓ held in the name of 127 Holdings at J.P. Morgan Chase (the "127 Holdings Account") received victim investor funds.

3

10. On or about October 31, 2017, MELI pled Count Five of Indictment S1 17 Cr. 127 (KMW), which charged him with committing securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2, which related to the Ticket Investment Scheme. Specifically, Count Five charged that:

> From at least in or about 2013 through in or about January 2017, in the Southern District of New York and elsewhere, JOSEPH MELI, the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5: by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, MELI, utilizing false representations, obtained funds from investors and then utilized those funds to make payments to earlier investors and otherwise misappropriated those funds for his personal benefit.

### **The Proposed Money Judgment**

11. During this investigation I, among other things, have reviewed records from numerous banks, reviewed emails and text messages relevant to the Ticket Investment Scheme, interviewed victims of the Ticket Investment Scheme, and discussed the case with FBI agents and contractors involved in the investigation and members staff of the Securities and Exchange Commission.

12. Based on my involvement in the investigation, I know that between approximately early 2015 and 2017, investors believed to be investors in the Ticket Investment Scheme sent approximately $104,764,565, to bank accounts for Advance Entertainment,

Advance Entertainment II, 127 Holdings, and 875 Holdings. Advance Entertainment LLC ("Advance Entertainment"), Advance Entertainment II, LLC ("Advance Entertainment II"), 127 Holdings LLC ("127 Holdings") and 875 Holdings ("875 Holdings").

13. The $104,764,565, the defendant received as a result of the fraudulent conduct alleged in Count Five represents property which constitutes or is derived from proceeds traceable to the commission of the securities fraud alleged in Count Five and is therefore forfeitable to the Government pursuant to Title 18, United States Code, Section 981(a)(1)(C).

## The Specific Properties

14. Based on my involvement in this investigation, as described above, I have learned that MELI also used investor funds to acquire certain specific property, as alleged in the Indictment. More specifically:

**October 2015: MELI Uses Investor Funds to Buy the Green Hollow Road House**

15. MELI used investor funds to both purchase a home at 50 Green Hollow Road, East Hampton, NY (the "Green Hollow Road House") and to make improvements to the Green Hollow Road Home.

16. In or about August 2015, MELI solicited a particular individual who operated a family-controlled investment office ("Victim Entity-1") to invest with MELI's company, Advance, in the purchase of a large number of tickets to Hamilton, for resale on the secondary market. In furtherance of the fraudulent scheme, MELI e-mailed a representative of Victim Entity-1 a purported draft "Letter Agreement" between Advance and the production company for Hamilton, which reflected an agreement between Advance Entertainment and Hamilton's producers, allowing MELI to buy 35,000 Hamilton tickets for a total of $7,000,000. MELI

5

forwarded this agreement to the representative of Victim Entity-1 along with the note "Signed copy for you coming."  However, MELI had no such agreement with Hamilton's production company and the Letter Agreement was fraudulent.

17.     However, on October 14, 2015, based upon MELI's misrepresentations, Victim Entity-1 wired $3,500,000 to the Advance Entertainment Account to finance MELI's purchase of Hamilton tickets.  That same day, MELI wired $2,875,000 from the Advance Entertainment Account, to an account for law firm located in Bridgehampton, New York ("Law Firm-1").  In September 2015, MELI had wired $300,000 to Law Firm-1.

18.     Two weeks later, on October 28, 2015, MELI's wife bought several parcels of land in Suffolk County, New York, including the property the Green Hollow Road House for $3 million.

19.     The seller of the Green Hollow Road House confirmed to law enforcement that Law Firm-1 represented the MELI's at the closing.  Other than the two payments sent from MELI to Law Firm-1 described above, I am not aware of any other transactions between MELI and Law Firm-1 that could have reached the $3 million purchase of the Green Hollow Road House.  Thus, I believe that the funds transferred by MELI to Law Firm-1 on October 14, 2015 were funds used to purchase the Green Hollow Road House.

**June 2016: MELI Uses Investor Funds to Make Improvements to the Green Hollow Road House, Purchase Jewelry, and Buy a Porsche 911 Turbo**

20.     In June 2016, MELI used investor funds to make improvements to the Green Hollow Road House and to buy a Porsche 911 Turbo (the "Porsche 911"), among other things.

21.     On June 16, 2016, Victim Entity-3[1] sent $1,000,000 to the Advance Entertainment Account, based on representations by MELI that MELI had an agreement to purchase tickets to concerts by Adele. Prior to this, the Advance Entertainment Account had a balance of $263,267.63.

22.     On June 20, 2016, another investor ("Victim-4") wired $500,000 to the Advance Entertainment Account, also based on MELI's representation that he had an agreement to buy tickets to Adele. Before these investments, the Advance Entertainment Account, had a balance of $1,384,659.13.[2]

23.     The following day, among other transactions, MELI wire (i) $3,300 to Flawless Jewelry and (ii) $450,000 to Green Home Construction Corporation. Based on my review of documents and correspondence obtained from Green Home Construction Corporation, I have learned that the payment to Green Home Construction represented a partial payment on two contracts that MELI and his spouse had entered into with Green Hollow Road House—one for improvements to the Green Hollow Road House, including interior renovations and construction of a basketball court, and the other for construction of a pool and pool house at the Green Hollow Road House.

24.     On June 23, 2016, with the account balance, $350,122.69, the Advance Entertainment Account made a wire transfer of $208,000 to Manhattan Motorcars, Inc. Based on

---

[1] The numbering system for victims in this affidavit corresponds to the numbering in the Government's Sentencing Memorandum.

[2] During the time June 16 and June 20, the 3098 Account also, among other things, charged $4,925.54 at Barneys New York, paid a $2,500 parking bill, and spent over $1,000 at a high-end clothing store in East Hampton New York, over $2,200 at a sporting goods store in East Hampton, New York, and over $1,500 at a swimwear store in the Hamptons.

7

my review of documents obtained from Manhattan Motorcars, I know that, the next day, MELI closed on the purchase of a Porsche 911 Turbo from Manhattan Motorcars, for a total purchase price of $238,000.

25. There were no other deposits in the Advance Entertainment Account between June 16 and June 24, other than the Victim Entity-3 and Victim-4 investments described above.

\*\*\*

26. In addition, investor funds remain in certain bank accounts, including the Advance Entertainment Account; the "Advance Entertainment II Account; and Account Number ▮▮▮▮▮▮ at Citibank, N.A. (the "2260 Citibank Account"). On April 11, 2017, the Court entered a post-indictment restraining order with respect to these accounts.

**The Advance Entertainment Account**

27. On or about January 12, 2017, a particular investment entity ("Victim Entity-8") wired $2 million to the Advance Entertainment Account. From my interview of a representative of Victim Entity-8, I have learned that the representative was advised by MELI, in sum and substance, that its investment would be used to purchase bulk tickets to a concert event for resale at a profit. Before the Victim Entity-8 transfer, as of January 12, 2017, the Advance Entertainment Account had a negative balance.

28. On or about January 18, 2017, Victim Entity-7 wired $5.91 million to the Advance Entertainment Account. From my interview with a representative of Victim Entity-7, I have learned that MELI told the representative, in sum and substance, that Victim Entity-7 investment would be used to purchase bulk tickets to *Harry Potter and the Cursed Child* for resale at a profit. As of January 18, 2017, the Advance Entertainment Account had a balance of

$511,340.08, absent Victim-2's investment.

29.     Between January 19, 2017 and January 25, 2017, the Advance Entertainment Account received an additional $2,250,000 in total from Victim Entity-7 and another entity I believe to be an investor in the Ticket Investment Scheme ("Victim-9"). There were no other deposits into the Advance Entertainment Account during this period.

30.     Based on my review of bank records for the Advance Entertainment Account, I have learned that no significant portion of the approximately $10,000,000 invested in total by Victim Entity-7, Victim Entity-8, or Victim-9 was used to purchase tickets. In mid and late January 2017, the Advance Entertainment Account did pay approximately $13,000 to a company I believe to be in the ticket-selling business. However, the vast majority of the payments made by the Account during this time appear to have been payments to other entities controlled by MELI (including the Advance Entertainment II Account and the 127 Holdings Account, as discussed below); payments to other investors in the Ticket Investment Scheme; payments for air travel, expensive meals in locations including Beverly Hills, California and East Hampton, New York, clothing and shoes, a limousine service, and other personal expenses; and, as also discussed below, a payment to the law firm representing MELI in this action.

31.     As of January 31, 2017, the Advance Entertainment Account had a balance of $119,774.45.[3]

32.     MELI is one of the signatories on the Advance Entertainment Account. There is one other signatory on the Advance Entertainment Account. However, based on a review of the

---

[3] The Advance Entertainment Account has been subject to a temporary restraining order in the SEC Litigation since January 30, 2017, and so those proceeds necessarily remain in the account.

bank records, I believe the purchases and withdrawals from the Advance Entertainment Account were made by MELI.[4]

**The Advance Entertainment II Account**

33.  MELI also deposited investor funds in the Advance Entertainment II Account. On or about January 19, 2017, the day after Victim Entity-7 wired $5.91 million to the Advance Entertainment Account, $1.805 million was wire transferred out of the Advance Entertainment Account to the Advance Entertainment II Account. Before January 19, 2017, the Advance Entertainment II Account had a balance of $0. As of January 31, 2017, the Advance Entertainment Account II had a balance of $515,000.[5]

**$551,400 on Deposit in the 2260 Citibank Account**

34.  The 2260 Citibank Account contains victim investor funds transferred by MELI, the day before his arrest, to his attorneys at Kasowitz, Benson, Torres & Friedman, LLP ("Kasowitz"). As described in detail below, the funds in the 2260 Citibank Account represent victim investor funds from two separate MELI-controlled accounts: the Advance Entertainment Account and the 127 Holdings Account.

35.  From my review of records from Merrill Lynch, I have learned that, on or about January 13, 2017, the day after Victim Entity-8 wired $2 million to the Advance Entertainment Account, $250,000 was wire transferred from the Advance Entertainment Account to an account

---

[4] Notably, during the relevant period, all statements and correspondence for the Advance Entertainment Account were sent to MELI's home address.

[5] The Advance Entertainment II Account has been subject to a temporary restraining order in the SEC Litigation since January 30, 2017, and so those proceeds necessarily remain in the account

10

for another entity controlled MELI, 127 Holdings (the "127 Holdings Account"). Before January 13, 2017, the 127 Holdings Account had a balance of $76,217.84.

36. From my review of records from Merrill Lynch for the Advance Entertainment Account, I have also learned that, on or about January 19, 2017, the day after Victim Entity-7 wired $5.91 million to the Advance Entertainment Account, another $225,000 was wire transferred from the Advance Entertainment Account to the 127 Holdings Account.

37. Shortly after these transfers, on or about January 26, 2017, MELI, during a consensually recorded conversation, advised a cooperating witness, in sum and substance, that MELI had learned that the FBI was investigating him, MELI, for fraud and that MELI, had just hired Marc Kasowitz as a lawyer. MELI further stated, among other things, that "I got my passport. I got my valuables. I'm draining bank accounts."

38. From my review of records from Merrill Lynch and JP Morgan Chase Bank for the Advance Entertainment Account and the 127 Holdings Account, I have learned that, on or about January 26, 2017, the same day as the conversation described in the preceding paragraph, MELI wire transferred a total of $685,000 into accounts maintained by Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz") at Citibank N.A (the "Kasowitz Transfer"). In particular, $450,000 was wired to Kasowitz from the Advance Entertainment Account and $235,000 was wired to Kasowitz from the 127 Holdings Account.

39. Based on my involvement in this investigation, I have also learned that the Government notified Kasowitz on February 10, 2017 that the $685,000 represented the proceeds of MELI's fraud. In addition, from an e-mail from an attorney with Kasowitz, I have learned that the $685,000 Kasowitz Transfer was subsequently moved, with the consent of the

11

Government, to the 2260 Citibank Account, a segregated account that contains only the victim investor funds transferred by MELI to Kasowitz. The Government and Kasowitz agreed that Kasowitz could keep any fees earned from the representation of MELI before February 10, 2017. Accordingly, the Government seeks the forfeiture of $551,000 from the 2260 Citibank Account.

**A Rolex Watch**

40.     MELI also used investor funds purchase a black Rolex Model 116710BLNR watch, serial number 412Z1733.

41.     On or about June 8, 2015, the Advance Entertainment Account received a $4,500,000 deposit from an entity I believe to be an investor in the Ticket Investment Scheme, based on my involvement in this investigation. The following day, MELI transferred $600,000 from the Advance Entertainment Account to the 127 Holdings Account

42.     Bank records for the 127 Holdings Account show, on or about June 15, 2015, an ATM purchase at Tourneau totaling $9,744.31.  Records obtained from Tourneau indicate that MELI used that money to purchase a black Rolex Model 116710BLNR watch, serial number 412Z1733.

## CONCLUSION

43.     I declare under penalty of perjury that the foregoing factual assertions are true and correct to the best of my knowledge and belief.

Dated: March 20, 2018

                                                SEAN SWEENEY
                                                Special Agent
                                                Federal Bureau of Investigation